**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lewis Mayer ENGLEMAN, a/k/a Joe, a/k/a Joseph Clements, a/k/a Elliott Epstein, a/k/a Joseph Alexander, Defendant–Appellant.**

No. 89–5145.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1990.

Decided Oct. 17, 1990.

As Amended Oct. 25, 1990.

Howard L. Cardin, Cardin & Gitomer, P.A., Baltimore, Md., for defendant-appellant.

Glenda Gay Gordon, Asst. U.S. Atty., Baltimore, Md., argued (Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

Lewis Mayer Engleman was charged in a three-count indictment with conspiring to distribute cocaine in violation of 21 U.S.C. § 846; possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Engleman pleaded guilty to the three counts in a superseding indictment. He appeals from his sentence, not his conviction.

The evidence discloses that Engleman became involved in the conspiracy in February of 1987. Engleman, a resident of Florida, was stranded in the Inner Harbor area of Baltimore in a snowstorm. In the hotel where he was staying, he met a man named Glen Dean who, upon learning Engleman was from Florida, brought up the subject of cocaine. Engleman led Dean to believe that he could supply Dean with cocaine. Engleman obtained Dean's telephone number and called after returning to Florida to arrange a prospective cocaine transaction in Baltimore.

Dean received cocaine from Engleman packaged in Marlboro cigarette packages wrapped in cellophane with a Florida tax seal apparently intact. Engleman told Dean he packaged the cocaine himself.

Engleman also distributed cocaine to several other coconspirators. Engleman usually flew from Florida to Baltimore where he would stay in a hotel in the Inner Harbor area. He would call his distributors to come get the cocaine. Thus, the conspiracy continued from February of 1987 until Engleman's arrest April 9, 1988.

During sentencing, there was a dispute about the amount of cocaine involved in the conspiracy. The district court did not determine exactly how much cocaine was involved. The probation officer's report found 17.383 kilograms. Engleman argued the amount was about 13.7 kilograms. A base offense level of 32 is the Guidelines level for offenses involving between 5 and 14.9 kgs of cocaine. On the other hand, a base level of 34 is appropriate for offenses involving between 15 kgs and 49.9 kgs. Drug Quantity Table § 2D1.1 (effective until November 1, 1989). The district court did not determine the amount of cocaine involved, but assigned a base offense level of 33, splitting the difference between levels 32 and 34.

Engleman's sentencing level thus started with a base level of 33. Two levels were subtracted because he accepted responsibility for his actions. Finally, three levels were added back because of his conduct as a manager or supervisor in the conspiracy. As noted, Engleman appeals from his sentencing.

On appeal, he contends that the Sentencing Guidelines are unconstitutional because they do not provide for trial by jury in the determination of facts affecting his sentence and also because proof beyond a reasonable doubt is not required.[1] He also argues that the Guidelines do not apply to his case because the conspiracy he is charged with straddled their effective date. Third, he asserts that the court erred in interpolating between two base levels instead of making a specific finding of how much cocaine was involved. Finally, he argues that the district court's finding that he played a supervisory or managerial role in the offense was not supported by a

preponderance of the evidence. We find error only in the district court's decision not to ascertain the amount of cocaine involved and for interpolating between the two levels. Accordingly, we affirm in part and vacate and remand in part.

Engleman argues that because the amount of cocaine involved forces the judge to assign a predetermined base level which, in turn, allocates the range of his sentence, the specific amount of cocaine involved in the offense is a fact question that must be found beyond a reasonable doubt. In addition, he argues that determination of the amount is a task for a jury.

■ With regard to the standard of proof to be applied in sentencing, this court, relying on the analysis of *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), reasoned that because the quantity of drugs goes to the question of the sentence rather than guilt, the government need only prove the quantity by a preponderance of evidence. *United States v. Powell*, 886 F.2d 81, 85 (4th Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990). In keeping with *Powell*, we hold that during sentencing it is appropriate, and not a violation of due process, for the lower court to consider an amount of cocaine that is established by a preponderance of evidence. In addition, because the quantity of drugs only goes to the sentence rather than guilt, trial by jury as to that fact is not required. See *McMillan, supra,* 477 U.S. at 93, 106 S.Ct. at 2420; see also *Gov't of Virgin Islands v. Castillo*, 550 F.2d 850, 855 (3d Cir.1977); 3 C. Wright, *Federal Practice and Procedure* § 512, at p. 10 (1982).

■ Engleman also claims the district court erred by departing upward three levels for the role he played in the offense, that of a manager or supervisor of the conspiracy. He argues that because the court stated that he did not meet the literal definition of a manager or supervisor, the finding was not supported by a preponderance of evidence. However, upon a read-

---

1. We assume reliance on the Fifth Amendment for the due process claim as to reasonable doubt and on the Sixth Amendment for the claim to trial by jury.

ing of the proceedings in context, it is apparent that the court was not deciding whether to increase at all but whether to increase three levels or four (as an organizer or leader) for the role Engleman played in the offense. See Guidelines § 3B1.1. The district court stated:

I would think that in a way one could read these guidelines and say the only think [sic] I could increase is by a level of 4 because you were not, in my judgment, a manager or supervisor.

I think what you were was a supplier who was engaged in significant organizational activities, who did, to some extent, directly control conduct which occurred—and for the record, I will say that there is a find [sic] of fact that I think the Timothy Johnston incident[2] establishes that.... I think a fair reading of the facts has to be that you had some role in what happened, in directing what happened.

Certainly, simply the use of the aliases, the trips, the packaging, one cannot help but find on the facts, in my judgment, any responsible fact-finder, that you did organizational work.... I think you were not simply a travelling salesman.

I think, however, the fairest thing to do is to say that really what you were the equivalent of was of a manager or supervisor.... I really think the fairest thing is to say that you were the equivalent of a three-level, although you are not within the literal terms of a manager or supervisor. I think I am really giving you a break because if I look up the literal terms I think what I have to give you is a four. I think that really a fair reading of what these guidelines are about is a three is fairest.

We are of opinion that the evidence supports the conclusion that Engleman's conduct did fall within the definition of a manager or supervisor, and that the conclusion of the district court is supported by the record.

Engleman next argues that because the conspiracy began before November 1, 1987, the effective date of the Guidelines, but ended after that date, application of the Guidelines to him would violate the ex post facto clause of the Constitution. We denied relief, however, on this very issue in *United States v. Sheffer*, 896 F.2d 842 (4th Cir.1990), decided since the sentencing in this case. So there is no merit to the claim.

■ The last assignment of error is that the district court erred in interpolating between levels 32 and 34 to arrive at level 33 as the base offense level from which to commence the balance of its computations. As we have earlier pointed out, there was evidence which, if credited, might support either 32 or 34 as the base offense level.

A restating of the dates involved is in order at this point. Engleman was engaged in his criminal activity from about February of 1987 until about April of 1988. He was indicted in April of 1988, tried on January 17, 1989, and sentenced on May 12, 1989.

The 1987 edition of the Sentencing Guidelines Manual provided, in Application Note 11 to § 2D1.1, for interpolation when it was uncertain whether the quantity of drugs fell into one category in the table or in an adjacent category, just the situation prevailing here if the quantity be deemed uncertain. Such interpolation was recognized in that edition of the Manual in Policy Statement 4(b) as a departure when it was an interpolation between two adjacent numerically oriented Guidelines rules. That part of Application Note 11, however, authorizing an interpolation, was removed in the Manual effective October 15, 1988, with the notation in Appendix C thereof that it had been "an erroneous reference to interpolation which cannot apply as the guideline is written." Policy Statement 4(b), however, in the edition effective October 15, 1988, in its reference to interpolation, remained unchanged. In the next edition of the Manual, effective November 1, 1989, the removal of that part of Application

---

2. The district court seems to be referring to an incident in which Engleman had a man known as Tex beat up, with a baseball bat, one Timothy

Johnson because he (Johnson) stole cocaine from one of Engleman's distributors.

Note 11 with respect to interpolation was continued and, as well, Policy Statement 4(b) was changed to omit the reference to interpolation. This change in Policy Statement 4(b) was taken account of in Appendix C, amendment 68, of the November 1, 1989, edition.

When the district court interpolated between levels 32 and 34 to arrive at level 33, it apparently relied on that part of Application Note 11 in the 1987 Manual permitting the same, for the government had advised the district court of the provision, which advice was acknowledged by the court. It was apparently not recognized at the time, however, by anyone in the proceedings that the provision had been removed from the Application Notes some months previous to the sentencing. At the time of sentencing, however, Policy Statement 4(b) of the October 15, 1988, edition, referring to interpolation, was still in effect, and the government now depends on that Policy Statement although such provision has also been removed from Policy Statement 4(b) in the Manual edition effective November 1, 1989.

We need not engage in an overly technical exercise in statutory and regulatory construction, for we think the rule in *United ed States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801), that a case should be decided by an appellate court upon the law existing at the time of the decision, requires that the district court decide the quantity of drugs and, that having been done, then apply the appropriate Guidelines sentence. There is no doubt that the quantity of drugs involved makes a significant difference in sentencing at the present time. See Policy Statement 4(b) in the Manual, effective November 1, 1989. This is shown beyond doubt by the detailed tables included in § 2D1.1 of the Guidelines. So we do not believe that a departure under 18 U.S.C. § 3553(b) is called for here, whether such a departure is called an interpolation or otherwise, for we cannot say that it was an aggravating or mitigating circumstance not adequately taken into consideration by the Sentencing Commission. Thus, we are of opinion that the district court erred in interpolating between levels 32 and 34.

The judgment of the district court is accordingly affirmed in all respects except as it interpolated between levels 32 and 34.

On that account, the sentence imposed is vacated and the case is remanded for resentencing and for further proceedings in the district court not inconsistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.