UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                          No. 95-5846

CARLOS ORTEGA VENEGAS,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CR-94-435-JFM)

Submitted: October 31, 1996

Decided: November 26, 1996

Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Howard L. Cardin, Mark L. Gitomer, CARDIN & GITOMER, P.A.,
Baltimore, Maryland, for Appellant. Lynne A. Battaglia, United
States Attorney, Christine Manuelian, Assistant United States Attor-
ney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Carlos Ortega Venegas appeals the 60-month mandatory minimum sentence he received after he pled guilty to conspiracy to distribute and possess marijuana with intent to distribute, 21 U.S.C.A. § 846 (West Supp. 1996). He contends that the district court erred in failing to make a specific factual finding as to the amount of marijuana attributable to him for sentencing purposes. USSG§ 2D1.1.* We find no error and affirm the sentence.

Venegas was arrested in November 1994. A number of his co-conspirators were also charged and entered guilty pleas. Venegas' plea agreement contained a stipulated statement of facts, and acknowledged that he would be subject to a mandatory five-year sentence if the district court found that he was responsible for 100 kilograms (220 pounds) of marijuana. The probation officer made no recommended findings in the presentence report, leaving the determination of the guideline range entirely to the district court. Briefly summarized, the pertinent evidence presented at the four-day sentencing hearing was as follows.

In April 1992, Venegas was stopped by Maryland State Police at the airport in Baltimore where he was about to board a flight for Los Angeles carrying $30,000 in cash. He said the money was to help a relative in Mexico start a go-cart business there through a company called Pits Performance. The Drug Enforcement Agency (DEA) was unable to verify his story with the company.

In September 1993, Anthony Pistorio, a confidential informant for the Baltimore County Police, was introduced to Venegas by a friend who said Venegas was his Mexican marijuana supplier and capable of supplying large amounts. At this meeting, Venegas said he could supply any amount of marijuana and would not sell less than 50 pounds at a time. The DEA was brought in at this point. Pistorio did not meet with Venegas again until July 29, 1994, when Venegas told

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1994).

2

Pistorio he had 50 pounds of marijuana on hand which he would sell for $30,000. On August 13, Venegas provided a one-pound sample to Pistorio.

Between August 12 and September 29, 1994, Venegas' cellular phone was tapped by the DEA. Intercepted conversations revealed that a new shipment of 50 or 60 pounds of supposedly better-quality marijuana arrived in Baltimore about August 16. Pistorio received 24 pounds from Venegas on August 18 for which he paid $30,000. On August 24, Pistorio met Venegas again to pay him $2500 still owed for the 25 pounds he had received, and Venegas urged Pistorio to buy at least 100 pounds in the future so as to get a better price.

On September 12, 1994, Joni Hesselrode made the last of many marijuana deliveries to Baltimore. She brought 50 pounds of marijuana in two suitcases on a flight from Los Angeles. Working mainly with Libertad Valencia in California and Oscar Palomera in Baltimore, Hesselrode had little contact with Venegas. However, on this trip, she was instructed to contact him. She went to a hotel and called Venegas. The hotel was placed under surveillance by drug task force agents. Moises Palomera then came to the hotel and loaded the marijuana into his stationwagon. Venegas was parked just ahead of the stationwagon and they left together. The marijuana later was seized from the stationwagon under a search warrant.

Finally, the government attempted to prove that Venegas sold 259 pounds of marijuana to Anthony Phillips, who was the subject of a separate investigation. While Venegas' phone was under a wiretap in August 1994, Phillips used Venegas' phone for a conversation with one of his marijuana customers. Right afterward, while waiting for an answer to another call, Phillips was recorded saying, "Tell him I'm going to take five to ten pounds of it right off the bat just to see what it's like. If it's good, I'll take thirty or forty of them." A short time later, Venegas called Oscar Palomera to ask whether he had any marijuana available. Transcripts were also introduced from Phillips' sentencing hearing, at which several of his customers testified. One identified a photograph of Moises Palomera as someone he had seen with Phillips a number of times. Another identified a photograph of Venegas as someone he had seen at Phillips' house.

3

The district court found that Venegas was responsible for more than 100 kilograms (220 pounds) of marijuana, but that a specific number of pounds could not be determined because it was uncertain whether Venegas was the sole supplier to Phillips. The court's finding gave Venegas an offense level of 26. USSG § 2D1.1. The court then gave Venegas a two-level adjustment for acceptance of responsibility, USSG § 3E1.1, making his offense level 24. Because he was in criminal history category I, his guideline range was 51-63 months. However, because his offense involved more than 100 kilograms, Venegas was subject to a mandatory minimum sentence of 60 months. 21 U.S.C.A. § 841(b)(1)(B)(vii).

The district court first found that 150 pounds were reasonably foreseeable to Venegas: the two 50-pound shipments from which samples were distributed to Pistorio and the 50-pound shipment received from Hesselrode. The court found that the $30,000 in cash Venegas carried in 1992 was evidence of another 50 pounds of marijuana. The court also found that there was proof that Venegas distributed some amount of marijuana to Phillips. Without making a specific finding as to how much marijuana Venegas sold to Phillips, the court concluded that Venegas had distributed at least 220 pounds or 100 kilograms, but not more than 400 kilograms. The court thus made an implicit finding that Venegas distributed at least 20 pounds to Phillips.

On appeal, Venegas argues that the district court clearly erred in not determining the exact amount of marijuana for which Venegas was responsible. Venegas contends that the district court was required to determine the specific number of kilograms for which Venegas was responsible pursuant to three prior decisions of this court: United States v. Irvin, 2 F.3d 72, 77-78 (4th Cir. 1993), cert. denied, 510 U.S. 1125 (1994); United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir. 1993); and United States v. Engleman, 916 F.2d 182 (4th Cir. 1990).

None of these precedents are helpful to Venegas. The district court did not interpolate between offense levels, as in Engleman, but determined that Venegas was responsible for between 100 and 400 kilograms (offense level 26). The court may approximate the quantity of drugs when the amount seized does not reflect the scale of the offense. USSG § 2D1.1, comment. (n.12). The district court made an

4

independent factual finding after allowing both parties to present evidence. The court rejected certain amounts because there was insufficient proof of a connection to Venegas. The court attributed to Venegas only those amounts which it found were within his agreement and reasonably foreseeable to him. See Gilliam, 987 F.2d at 1012-13. The court determined the amount of drugs reasonably foreseeable to Venegas before deciding whether the mandatory minimum applied to him. Irvin, 2 F.2d at 73.

Venegas also argues that his case is like United States v. Estrada, 42 F.3d 228 (4th Cir. 1994), in which the district court relied on a stipulation concerning the drug amount which was based on the parties' misconception that a mandatory minimum sentence is triggered by the drug amount which comprises the defendant's total relevant conduct rather than the amount involved in the offense of conviction. In this case, however, the mandatory minimum sentence was imposed based on the court's finding that more than 100 kilograms of marijuana was reasonably foreseeable to Venegas during his participation in the conspiracy to which he pled guilty.

Accordingly, the sentence is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5