**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4393

JAMES A. FORD, a/k/a Peanut,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4419

TERRY ROGER WARREN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                      No. 96-4427
ROBERT JEROME WARREN, JR., a/k/a
J.J.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 96-4428

KENNETH EDMONDS, a/k/a Red,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4455

ROBERT JEROME WARREN, SR., a/k/a
Jerry,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4456

MARION LATIMER, JR., a/k/a J.R.,
Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of West Virginia, at Huntington.
Joseph Robert Goodwin, District Judge.
(CR-95-147)

Submitted: December 3, 1996

Decided: January 16, 1997

Before WILKINS, HAMILTON, and MOTZ, Circuit Judges.

_____

No. 96-4393 dismissed and Nos. 96-4419, 96-4427, 96-4428,
96-4455, and 96-4456 affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

George A. Mills, III, Huntington, West Virginia; Jacqueline Ann Hal-
linan, Charleston, West Virginia; Nelson R. Bickley, Jr., BICKLEY,

2

JACOBS & RUFUS, Charleston, West Virginia; Anne Elizabeth Shaffer, SALSBERY & DRUCKMAN, Charleston, West Virginia; John Robert McGhee, Jr., KAY, CASTO, CHANEY, LOVE & WISE, Charleston, West Virginia; Gerald Blair, Jr., Huntington, West Virginia, for Appellants. Rebecca A. Betts, United States Attorney, Michael L. Keller, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants were all involved in a conspiracy to distribute crack cocaine in Williamson, West Virginia, between 1993 and 1995. Robert Warren, Sr. (Jerry Warren), pled guilty to conspiracy. Terry Warren (Jerry's brother) pled guilty to aiding and abetting the distribution of crack in August 1995. James Ford, Marion Latimer, Kenneth Edmonds, and Robert ("J.J.") Warren, Jr. (Jerry's son) entered pleas to crack distribution. All contest their sentences. We dismiss Ford's appeal but affirm the other sentences.

Briefly summarized, the facts developed in the district court showed that Durand Warren (Jerry's nephew) and J.J. Warren got into crack distribution while they were students at Marshall University in Huntington, West Virginia. Durand began supplying crack to Jerry Warren in 1994. J.J. Warren dropped out of school and returned to Williamson but continued to sell crack which he obtained in Huntington. Jerry Warren sold crack to Mark Damron, a beauty shop operator who held regular crack parties in his shop after hours. In the spring of 1995, Jerry Warren developed a close relationship with Kelli Koontz, one of Damron's friends, supplied her with crack at no expense, and paid for an apartment where she and her friend Becky Dean lived. Miki Koontz, Kelli's younger sister, also attended the

3

parties at Damron's shop, and associated with J.J. Warren and Durand Warren during the summer.

In mid-August 1995, Miki Koontz entered a hospital for drug treatment. Shortly afterward, Damron (who had been an occasional informant for local authorities) warned Kelli Koontz and her mother that federal indictments were in the works. He urged her to cooperate. Kelli instead informed Terry and Jerry Warren. The Warrens initially threatened Dean, whom they perceived as most likely to give information about their drug activities, urged Kelli and Dean to leave Williamson, and promised to give each of them $1000 if they would go. Terry Warren also called Miki Koontz in the hospital.

Kelli Koontz and Becky Dean went to Atlanta on August 22, 1995, and Miki Koontz was released from the hospital the same day. Miki registered for classes as a freshman at Marshall University during the following week. On Friday night, about an hour before she was to go to a high school football game with her mother, Miki left home and drove to the house of Chris Pennington, a high school friend who was also a drug user. She did not return home, and she was found shot to death two days later. Pennington confessed to shooting her but said that Jerry Warren ordered him to commit the murder in lieu of paying his drug debt to Warren, stood by while it was done, drew a gun on Pennington, and threatened to kill him and his family if he did not do it. As a result of Pennington's testimony at the sentencing hearing, Jerry Warren's sentence was enhanced for first-degree murder under USSG § 2D1.1(d).[1]

Latimer traveled to Ohio and North Carolina to buy crack for Jerry Warren and distributed crack in Williamson. Edmonds made at least one trip to Ohio and one trip to North Carolina with Latimer to purchase crack for Jerry Warren. Terry Warren spent time at Jerry's house during the summer of 1995 and drove Jerry at times when he delivered crack to customers. Ford bought crack from Jerry Warren and resold it.

_____

[1] United States Sentencing Commission, <u>Guidelines Manual</u> (Nov. 1995).

4

I. <u>Ford</u>

Ford contends that the district court should have departed downward under USSG § 4A1.3 from the career offender guideline range because his prior drug convictions occurred in the 1980's and involved small amounts of Valium and marijuana. The district court acknowledged its authority to depart from a career offender sentence in an unusual case but, relying on <u>United States v. Brown</u>, 23 F.3d 839, 842 (4th Cir. 1994), noted that prior convictions involving small amounts of drugs did not make a case unusual. The court therefore declined to depart. A sentencing court's decision not to depart is not reviewable on appeal. <u>United States v. Bayerle</u>, 898 F.2d 28, 31 (4th Cir.), <u>cert. denied</u>, 498 U.S. 819 (1990). Ford's appeal will therefore be dismissed.

II. <u>Terry Warren</u>

The probation officer recommended a two-level adjustment for obstruction of justice based on Terry Warren's threat to Becky Dean and attempt to get Kelli Koontz and Becky Dean to leave Williamson so as to eliminate the possibility that they might give information to investigators. Terry Warren objected to the adjustment and denied either threatening Dean or attempting to get the women to leave but did not testify or offer evidence to rebut the information at sentencing. Although the government was prepared to present evidence, the district court did not ask to hear it and simply adopted the probation officer's recommended findings.

Terry Warren argues that, by not requiring the government to put on evidence, the court failed to resolve a contested issue and thus did not comply with Fed. R. Crim. P. 32(b)(6)(D). He suggests that the 1994 amendment to Rule 32 negates this Court's holding in <u>United States v. Terry</u>, 916 F.2d 157, 162 (4th Cir. 1990), that a defendant must make an affirmative showing that disputed information in the presentence report is inaccurate.

The 1994 amendments to Rule 32 "focused on preparation of the presentence report as a means of identifying and narrowing the issues to be decided at the sentencing hearing" and reorganized the rule "to reflect an appropriate sequential order in the sentencing procedures."

5

Fed. R. Crim. P. 32 advisory committee's note. The amendments did not change the defendant's burden of putting on evidence to support a claim that information in the presentence report is inaccurate. Under the Rule, the district court may in its discretion hear evidence from the parties concerning a disputed issue but need not do so if the issue can be resolved without evidence. Fed. R. Crim. P. 32(c)(1). Therefore, the court did not err in dispensing with the government's evidence.

III. Robert Warren, Jr. (J.J.)

Following his plea agreement, J.J. Warren gave immunized information about ten trips he made in the fall of 1994 to Huntington to obtain crack for sale in Williamson. Those amounts were not used to calculate his sentence. At the sentencing hearing, the government offered evidence from Steven Dillard, who testified that he bought crack from J.J. Warren more than once during the summer of 1994. J.J. Warren testified that he sold crack to Dillard as often as five times during the summer of 1994, but said the most he sold in a given transaction was four grams. Defense counsel argued that, excluding immunized information, J.J.'s involvement was about 20-30 grams. The district court ultimately found that J.J. Warren was responsible for 20-35 grams of crack.

On appeal, J.J. Warren argues, first, that the sales to Dillard were protected information. There was no suggestion in the district court that Dillard's testimony was immunized under the plea agreement. Therefore, the issue has been forfeited absent a showing of plain error. United States v. Grubb, 11 F.3d 426, 440 (4th Cir. 1993). J.J. does not attempt to establish plain error and the record does not disclose that it occurred.

Second, J.J. Warren maintains that the district incorrectly calculated the amount he sold to Dillard. The court stated that Dillard said he bought an ounce (28.35 grams) and an eight-ball (3 grams). Dillard actually said he bought a half-ounce (14 grams) or an eight-ball (3 grams) on a number of occasions. However, if Dillard bought one half-ounce and two eight-balls, the total would be 20 grams. The testimony supports a finding of at least this much, particularly in view of

6

defense counsel's estimate that his client was liable for 20-30 grams. Therefore, the court's finding was not clearly erroneous.

IV. Edmonds

Edmonds first challenges the district court's determination of his criminal history. He contends that counting his prior convictions in Ohio for "drug abuse" and "attempted drug abuse" with the effect of increasing his current sentence unconstitutionally penalizes him for being a drug addict. He cited Robinson v. California, 370 U.S. 660, 667 (1962), in which the Supreme Court struck down a state statute which made it a crime to be addicted to narcotics. The district court found that his criminal conduct--not his addiction--was punished by the Ohio statute[2] and denied his objection. We agree. Edmonds' Eighth Amendment argument fails because his federal sentence has not been increased because of his addiction but for unlawful conduct which could be committed by addicts and non-addicts alike.

Edmonds next argues that the district court failed to understand its authority to depart on the ground that his prior convictions for drug abuse overstated the seriousness of his past criminal conduct. He urges this Court to find that convictions for drug abuse may overstate a defendant's criminal history and to remand so the court may reconsider a departure on this ground. A sentencing court's decision not to depart because of lack of legal authority to depart is reviewed de novo. United States v. Hall, 977 F.2d 861, 863 (4th Cir. 1992). While the guidelines do not allow a departure based solely on drug dependence, the district court recognized its authority to depart under USSG § 4A1.3, but chose not to exercise its discretion. Therefore, a remand is not necessary.

The district court found that Edmonds was not a leader in the offense and was motivated by his addiction, rather than by a desire to make money, but did not have a minor role because he participated in many aspects of the conspiracy, including traveling out of state with Latimer to purchase crack for Jerry Warren and selling crack.

_____

2 The Ohio "Drug Abuse" statute forbids knowingly obtaining, possessing, or using a controlled substance. Ohio Rev. Code Ann. § 2925.11 (Baldwin 1996).

7

The district court's finding is not clearly erroneous. A defendant who has sold drugs in a drug conspiracy does not have a minor role in the offense. United States v. Brooks, 957 F.2d 1138, 1149 (4th Cir.), cert. denied, 505 U.S. 1228 (1992).

V. Robert Warren, Sr. (Jerry)

The district court determined that 53 ounces of crack (1.5 kilograms) was attributable to Jerry Warren, giving him a base offense level of 38. USSG § 2D1.1. The court found that Jerry Warren had caused Pennington to kill Miki Koontz and applied the subsection (d) cross-reference to USSG § 2A1.1 (First Degree Murder) if a victim was killed under circumstances which would constitute murder under 18 U.S.C.A. § 1111 (West Supp. 1996) (murder within federal jurisdiction). This increased the offense level to 43, the highest listed in the Sentencing Table. Further enhancements were made for possession of firearms, USSG § 2D1.1(b)(1), leadership role, USSG § 3B1.1, and obstruction of justice, USSG§ 3C1.1. None of these altered the guideline range, which was life. Warren received a life sentence.

Jerry Warren contends that enhancing his sentence for first-degree murder by applying the cross-reference in USSG § 2D1.1(d) instead of through an upward departure violates due process because it removes the district court's discretion and in effect results in a murder conviction by a preponderance of the evidence. He concedes that restrictions on a sentencing court's discretion do not violate due process, but argues that this principle should not apply when a defendant's sentencing amounts to a constructive conviction of an offense not charged. He argues that conduct proved by less than a reasonable doubt cannot, by definition, be murder under 18 U.S.C.A. § 1111.

This argument ignores Supreme Court and Fourth Circuit precedent which holds that use of the preponderance of the evidence standard in determining facts which affect the imposition of a sentence within the statutory limits does not offend due process. See McMillan v. Pennsylvania, 477 U.S. 79, 84-88, 93 (1986); United States v. Engleman, 916 F.2d 182, 184 (4th Cir. 1990). Jerry Warren was not convicted or sentenced for murder; however, his sentence for the drug conspiracy to which he pled guilty could be increased without a viola-

8

tion of due process on the court's finding that it was more likely than not that he was responsible for Miki Koontz's murder. See United States v. Rivera-Gomez, 67 F.3d 993, 1001 (1st Cir. 1995) (Supreme Court has made it clear that such sentencing enhancements do not constitute punishment for separate offenses, citing Witte v. United States, ___ U.S. ___, 63 U.S.L.W. 4576 (U.S. Jan. 6, 1995) (No. 94-6187)). Moreover, the enhancement for the murder had no practical effect on Jerry Warren's sentence.

Jerry Warren also questions the adequacy of the government's evidence that he directed Pennington to commit the murder, arguing that Pennington was not credible because there was no corroboration for his testimony that he bought drugs from Jerry Warren and owed Warren money. The district court found that the murder enhancement depended on the credibility of Pennington's testimony and that Pennington was credible in all material respects. We do not review the court's decision concerning Pennington's credibility. We do find that, because of Pennington's testimony, the court's finding that Jerry Warren directed the murder was factually supported by a preponderance of the evidence.

Jerry Warren also argues that he was sentenced to two life sentences, one for a crime which he did not commit, and for this reason his sentence is disproportionate punishment which violates the Eighth Amendment. Warren received one sentence of life imprisonment. Given the amount of drugs involved and Warren's participation in a murder, the sentence does not violate the Eighth Amendment. See United States v. D'Anjou, 16 F.3d 604, 612-14 (4th Cir.), cert. denied, ___ U.S. ___, 62 U.S.L.W. 3861 (U.S. June 27, 1994) (No. 93-9131).

Warren contends that the district court clearly erred in making the enhancement for possession of firearms because there was no testimony that he actively employed a firearm. He relies on Bailey v. United States, ___ U.S. ___, 64 U.S.L.W. 4039 (U.S. Dec. 6, 1995) (No. 94-7448). This claim is without merit because Bailey does not preclude a sentencing enhancement for possession of a firearm during a drug offense. United States v. Hawthorne, 94 F.3d 118, 122 (4th Cir. 1996).

The obstruction of justice adjustment Jerry Warren received was based on his successful attempt to have Kelli Koontz and Becky Dean

9

leave Williamson to prevent them from giving information to authorities about his drug business. He argues here that the evidence did not support a finding that he persuaded them to leave because they had their own reasons to leave, i.e., they feared trouble with the police about some porch furniture they had stolen. Kelli Koontz testified that when Jerry and Terry Warren and other members of their family discussed the impending federal indictments, Jerry and Terry wanted Kelli Koontz and Becky Dean to go to Ohio and were willing to supply money for travelling because they expected the authorities to question the women. She said Jerry Warren gave them $140 for expenses. Although they went to Atlanta instead of Ohio, the women left Williamson. The adjustment is properly given if there is evidence that the defendant unlawfully influenced a witness in order to obstruct or impede the investigation of the offense. USSG§ 3C1.1, comment. (n.3). The district court's finding was not clearly erroneous.

Jerry Warren argues that the evidence was insufficient for a finding that he was responsible for 53 ounces of crack because the government did not establish how its sources of information knew the weight of the crack. Warren's attorney did not make this specific argument at sentencing, although he argued that some of the witnesses were not credible. The information on the crack amounts came from statements by Durand Warren, J.J. Warren, and Edmonds. All of these witnesses had first-hand knowledge of the amounts they gave information about and all were experienced drug dealers. The district court did not clearly err in determining the amount of crack based on their statements.

VI. Latimer

Testifying at his sentencing hearing, Latimer denied any participation in a crack conspiracy with Jerry Warren, although he admitted buying crack for others as a favor and selling small amounts of crack to Damron. The district court did not find his testimony credible. Because Latimer did not admit the full extent of his involvement, the court denied him an adjustment for acceptance of responsibility under USSG § 3E1.1. The court also granted the government's request for an obstruction of justice adjustment based on Latimer's untruthful testimony at sentencing. USSG § 3C1.1, comment. (n.3(b), (h)).

10

The court's decision does not constitute double counting, as Latimer argues here, even though both findings were based on the same conduct. The denial of a reduction for acceptance of responsibility is not a penalty. United States v. Frazier, 971 F.2d 1076, 1083-87 (4th Cir. 1992), cert. denied, 506 U.S. 1071 (1993). Moreover, the structure of the guidelines frequently permits the application of several sections to the same conduct. See United States v. Curtis, 934 F.2d 553, 556 (4th Cir. 1991). Finally, the commentary to USSG § 3E1.1 provides that an adjustment for acceptance of responsibility generally will not be available to a defendant who has received an enhancement for obstruction of justice.

Latimer also challenges the district court's finding that he was responsible for the entire 53 ounces of crack which Jerry Warren obtained during the life of the conspiracy. First, he suggests that he left the conspiracy at some point and argues that the court failed to make a finding on the duration of his involvement. In fact, the evidence was that Latimer was involved through the summer of 1995; there was no evidence that he withdrew from the conspiracy. Second, he argues that the whole 53 ounces was not reasonably foreseeable to him. In a jointly undertaken criminal activity, a defendant is responsible for reasonably foreseeable acts of others in furtherance of the activity. USSG § 1B1.3(a)(1). The court found that Latimer was Jerry Warren's chief courier, bringing into Williamson a good part of the crack Jerry Warren sold. Latimer also sold crack during the time that Durand Warren was supplying crack to Jerry Warren; consequently, the court did not clearly err in finding that the whole 53 ounces was reasonably foreseeable to him.

Last, Latimer contends that the court should have found him more credible than the government witnesses whose testimony conflicted with his. The credibility of witnesses is a decision for the factfinder and is not reviewable on appeal. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

Accordingly, Ford's appeal is dismissed. The remaining Appellants' sentences are affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the

11

materials before the court and argument would not aid the decisional process.

No. 96-4393 - <u>DISMISSED</u>
Nos. 96-4419/27/28/55/56 - <u>AFFIRMED</u>

12