4 F.3d 987
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Guillermo MORAN, Defendant-Appellant.
 No. 92-5856.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 15, 1993.
Decided: August 30, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert N. Maletz, Senior Judge, sitting by designation. (CR-89-205-JH)
 Bennett Martin Epstein, New York, New York, for Appellant.
 James Richard Alsup, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 Gary P. Jordan, United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 The defendant-appellant Guillermo Moran pleaded guilty to conspiracy to possess with intent to distribute and distribution of a mixture containing cocaine in violation of 21 U.S.C.Sec. 846. He was sentenced to 121 months imprisonment and five years supervised release. On appeal, Moran challenges the district court's computation of his sentence.
 
 
 2
 As a result of his guilty plea, Moran was held accountable for 4.08 kilograms of cocaine. The district court further found, however, that, pursuant to the relevant conduct provisions of the Sentencing Guidelines, Moran also should be held accountable for an additional 25 kilograms of cocaine which he and co-conspirator Dennis Case attempted to transport from Florida (hereinafter referred to as the "Florida conspiracy"). Moran contends that the district court, when resolving the question of whether the Florida conspiracy should be considered as relevant conduct, abused its discretion by relying on the transcript of his criminal trial held before another judge instead of holding an evidentiary hearing and compelling the government to produce the live testimony of its key witnesses. Moran essentially asserts that the transcribed testimony of Dennis Case, the government's chief witness, simply was too unreliable for the district court to use at sentencing.
 
 
 3
 In the alternative, Moran contends that the government's evidence of the uncompleted Florida distribution was legally insufficient to be used to increase his sentence. Specifically, Moran maintains that the district court erred when it found the Florida conspiracy to be relevant conduct within the meaning of the Guidelines. Assuming arguendo that the Florida conspiracy was relevant conduct, Moran further contends that the evidence offered by the government was too vague to satisfy the requirement of proof by a preponderance of the evidence.
 
 I.
 
 4
 By pleading guilty Moran admitted to being a member of a conspiracy in which cocaine was transported from New York to Maryland for distribution from roughly April 1988, through December 1988. In April 1988, Sandra Amos, her boyfriend Dennis Case, and James Lawrence Woolford met to discuss the possibility of distributing cocaine in the Easton, Maryland area. The parties agreed that Amos and Case would provide Woolford with cocaine which he then would distribute in and around Easton. Case thereafter made regular trips to New York City where he would purchase cocaine from the defendant Moran. On each trip, Case purchased roughly six ounces of cocaine. Case and Amos would use some of the cocaine obtained from Moran for personal use and then would give Woolford the remaining amount for distribution. The proceeds from the sales were returned to Case, who would purchase more cocaine from Moran.
 
 
 5
 In March 1992, the government filed a Superseding Information against Moran.[1] Moran appeared before the district court and entered a guilty plea to the single conspiracy charge. At the time of the rearraignment, the parties agreed that for the purposes of sentencing the amount of cocaine distributed by Moran in the New York/Maryland conspiracy would total 4.08 kilograms. The plea agreement specifically stated, however, that the "parties disagree whether Moran was a participating member of a conspiracy including Dennis Case and Sandra Amos to bring cocaine by aircraft from Florida to Maryland, and if he was a member of that conspiracy, how much cocaine was reasonably foreseeable" for the purposes of applying the SentencingGuidelines and the rules of relevant conduct. The agreement also stated that if the district court found that Moran was a member of the Florida cocaine conspiracy, the government would recommend that the amount of cocaine reasonably foreseeable by Moran would be 25 kilograms.
 
 
 6
 Shortly after Moran entered his guilty plea, his case was transferred to another district judge. Moran filed several motions, including a motion to compel the government to produce at the sentencing hearing the witnesses key to the Florida conspiracy in order to provide the court with the opportunity to see the witnesses in person and to permit further cross-examination. The district court denied the motion to require the compulsory attendance of witnesses. In resolving the Florida cocaine issue and the question of relevant conduct, the district court heard oral argument from both sides and also relied on the transcript from the trial of Amos and Moran. The court found that Moran was involved in the Florida cocaine conspiracy and found him responsible, for sentencing purposes, for 25 kilograms of cocaine.[2] Moran was sentenced to 121 months imprisonment and five years supervised release.
 
 II.
 
 7
 The Florida conspiracy at the heart of the dispute in the instant case allegedly involved efforts by primarily Moran and Case to fly cocaine from Florida and to bring it north for distribution. Case testified at trial that with the financial help of Moran and Amos he purchased an airplane to be used, in part, to transport cocaine from Florida. Case testified that he was expected to pick up roughly 25 to 75 kilograms of cocaine from Florida. Conspirator Woolford also testified that Case had told him he was flying to Florida and was transporting cocaine from Florida to New York for Moran. Woolford was further told by Case that Moran had put him in charge of transportation for the Florida plan.
 
 
 8
 According to Case, sometime in late February or early March 1989, Moran told Case to fly to Florida and to telephone him when he arrived. Unable to use his own plane due to maintenance problems, Case chartered an aircraft sometime in late March. He also hired a pilot who, in fact, was undercover Drug Enforcement Administration ("DEA") Agent Kevin Frye. Case told Frye that he was picking up cocaine from someone named "William" and that he was being paid $500 for every kilogram of cocaine he transported. Case and others referred to Moran as "Willie." At Case's Florida hotel, DEA agents booked the room next to Case's. DEA Agent William Segeda testified that there he overheard Case speak to someone on the telephone by the name of "Willie." Case, however, soon was tipped off by an airport employee that Frye was a DEA agent. He abandoned his efforts, and the Florida cocaine was never transported and the scheme never completed.
 
 
 9
 When computing a defendant's base offense level under the Guidelines, district courts are to consider all of the defendant's conduct that is related to the offense of conviction. See U.S.S.G. Sec. 1B1.3. At issue in the instant case is whether the district court erred in finding the Florida conspiracy to be "part of the same course of conduct or common scheme or plan" as Moran's offense of conviction. U.S.S.G. Sec. 1B1.3(a)(2). The commentary to Sec. 1B1.3 specifically states that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. Sec. 1B1.3, comment. (backg'd.). Furthermore, a defendant can be held accountable for the conduct of others which was taken in furtherance of a conspiracy and which was reasonably foreseeable by him or by her. U.S.S.G. Sec. 1B1.3, comment. (n.2). The government must prove relevant conduct and the quantity of drugs by a preponderance of the evidence. See U.S.S.G. Sec. 6A1.3, comment.
 
 
 10
 For sentencing purposes the government offered primarily the testimony of co-conspirator Case to prove that Moran was involved in a conspiracy to ship cocaine from Florida and to hold him accountable under the relevant conduct provisions for 25 kilograms of cocaine. Moran motioned the court to compel the government to produce the attendance of the key witnesses to the Florida conspiracy in order to permit him to cross-examine them directly on the Florida issue and to permit the court to witness their demeanor. Moran especially sought to cross-examine Dennis Case at sentencing. Moran emphasizes that Case was shown at trial to be someone who used drugs extensively and who was prone to exaggeration. Moran vigorously asserts that the truth behind the Florida cocaine conspiracy essentially rested on the accuracy of Case's "vague" story. The government's corroborating witnesses-Woolford, Agent Frye, and Agent Segeda-had no independent knowledge of Moran's involvement with Case in the Florida conspiracy. Instead, the men merely reported at trial what Case had told them or what they had overheard as to Moran's role. Under these circumstances, Moran contends, the transcribed testimony alone did not provide the court with a reliable basis upon which to rule, and the paramount issue of Case's credibility should have been tested and resolved through live testimony.
 
 
 11
 A sentencing court, however, is not required to hold an evidentiary hearing. Rather the decision to hold an evidentiary hearing is committed to the court's discretion:
 
 
 12
 Although lengthy sentencing hearings should seldom be necessary, disputes about sentencing factors must be resolved with care. When a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances. An evidentiary hearing may sometimes be the only reliable way to resolve the dispute issues. The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.
 
 
 13
 U.S.S.G. Sec. 6A1.3, comment. (citation omitted). Moreover, sentencing courts are not restricted to information that would be admissible only at trial but are permitted to rely on any information, including hearsay, as long as that information has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3(a).
 
 
 14
 We do not find that the district court abused its discretion in denying Moran's motion. Although it may have been of use to see the key witnesses in person, their presence at sentencing was not essential for the court to make its credibility determinations and, more to the point, to determine whether the government's proof was sufficiently reliable to be considered under the Guidelines. Observing a witness testify is but one method to judge his or her credibility. The parties were given the opportunity to submit memoranda on the Florida conspiracy and also argued their positions before the court at the sentencing hearing. Moran's counsel repeatedly demonstrated and emphasized in his memoranda and in argument that several witnesses confirmed that Case was not always a trustworthy individual and was addicted to drugs. In addition, the district court was given the transcript of Case's testimony and that of other material witnesses. The court therefore had before it a written record revealing all of the evidence that was consistent with Case's story as well as that testimony which was damaging to Case and to the government's position.[3] In its own words, the court had "become familiar with this case,"[4] and it clearly recognized Moran's position with respect to Case.
 
 
 15
 Moran, of course, also had an opportunity to impeach and to cross-examine Case at the trial. As the district court and Moran's counsel agreed at sentencing, Case was the principal witness for the government. The district court commented that, although it did not preside over the trial, it felt confident that a major portion of Moran's defense was to demonstrate that Case simply was not worthy of belief. Defense counsel agreed that Case's credibility certainly had been explored at trial.
 
 
 16
 In short, Case's credibility was more than adequately called into question without the aid and expense-in terms of cost and time-of actually requiring him to testify again at the sentencing stage. The transcribed testimony and counsel's oral arguments provided the court with sufficient evidence to resolve credibility and to determine whether Case's testimony should be considered under the Guidelines. We find therefore that the district court did not abuse its discretion in denying Moran's motion.
 
 
 17
 As to Moran's assertion that the transcribed testimony was too unreliable to be used at sentencing, we cannot say that the district court clearly erred in crediting the testimony of Case and the government's supporting witnesses. Moran does not contend that Case never in fact flew to Florida. Rather, his primary method of demonstrating the unreliability of the government's evidence is to impeach Case's character. As the factfinder for the purposes of sentencing, however, the district court was obligated to resolve credibility and reliability issues, and it resolved those issues in favor of the government. The whole record-consisting largely of the testimony of Case, buttressed by the testimony of Woolford, Frye, and Segeda-supports the district court's determination. Case's story, for example, was at least supported by the testimony of three witnesses. The three witnesses confirmed that at the time of the alleged conspiracy, Case told them (or was overheard to say) that he was transporting Florida cocaine for Moran (or "Willie"). Agent Frye in fact flew Case to Florida for the scheme. In short, Case's testimony and the supporting evidence were not inherently unreliable, and we cannot say that the district court erred in considering the government's evidence.
 
 III.
 
 18
 In the alternative, Moran contends that the testimony concerning the Florida cocaine conspiracy was legally insufficient to be used in computing his sentence. Moran first stresses that the alleged scheme for Case to transport cocaine from Florida for Moran should not even have been considered as "relevant conduct" for the purposes of the Guidelines calculations. Not every drug transaction in which a defendant may have been involved, he contends, is "part of the same course of conduct or common scheme or plan as the offense of conviction." Moran emphasizes that he pleaded guilty only to a limited drug distribution line running from New York to Maryland. According to Moran, however, the operative aspects of the Florida conspiracy, as shown by the government's evidence, were not similar to his offense of conviction.
 
 
 19
 The district court disagreed, and we do not find its conclusion to be clearly erroneous. The "relevant conduct" language of Sec. 1B1.3 is to be read fairly broadly. See, e.g., United States v. Mullins, 971 F.2d 1138, 1143 (4th Cir. 1992) (approving of a broad approach to relevant conduct provisions of Sec. 1B1.3(a)). The Guidelines list factors significant for determining whether related offenses are sufficiently connected to the underlying conduct to be considered part of the "same course of conduct." Key factors include the degree of similarity of the offenses, the time interval between the offenses, and the nature of the offenses. U.S.S.G. Sec. 1B1.3, comment. (n.9(B)); see also Mullins, 971 F.2d at 1144 (For the purposes of applying Sec. 1B1.3(a)(2), court should look at similarity, regularity, and temporal proximity between the offense of conviction and the uncharged conduct.).
 
 
 20
 The district court cited several factors supporting its finding that the Florida conspiracy was relevant conduct. For example, the parties, i.e., Moran, Case, and-to a lesser degree-Amos, were the same in both schemes, as was the drug of choice. The Florida conspiracy appeared to mark an expansion of the distribution line Moran and Case already operated. Once again, Case was responsible for picking up and transporting the drugs. Finally, the Florida plan apparently developed and an airplane for deliveries was purchased during the same time frame as the conspiracy to which Moran pleaded guilty. We find no error in the district court's finding that the Florida conspiracy was "part of the same course of conduct" as the conspiracy to which Moran pleaded guilty.
 
 
 21
 Moran further argues that the details of the Florida scheme were so vague and its accomplishment so uncertain, that, as a matter of law, the district court erred when it considered Case's testimony as sufficient evidence of an "uncompleted distribution" for enhancing his sentence under the relevant conduct provisions. According to Moran, the government should show an uncompleted distribution with a high degree of certainty and specificity that simply was not present in the instant case.
 
 
 22
 Again, the district court was not shown to be clearly erroneous in finding the government's presentation to be sufficient evidence of an unfulfilled conspiracy. Rejecting the defendant's argument concerning the lack of specificity, the district court noted that, in contrast to some cases, the government here was not relying merely on boastful and unsupported comments made by a defendant. Instead, Case testified that the amount of cocaine he was scheduled to pick up was 25 to 75 kilograms on the first trip. His testimony, credited by the court, also indicated that Moran advanced him $10,000 to purchase a plane for the deal. Case, in fact, flew to Florida under Moran's directions to pick up cocaine. Other witnesses also were told at the time Case prepared to go to Florida that Case was scheduled to pick up 50 kilograms of cocaine and was to receive $500 per kilogram. The record as a whole supports the district court's conclusion that there was sufficient evidence of an uncompleted distribution to permit its consideration in sentencing.
 
 
 23
 Accordingly, the sentence imposed by the district court is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 In June 1989, Moran and Sandra Amos were indicted in a three-count indictment. Count 1 charged them with conspiring with Case, Woolford, and others in Maryland and elsewhere to distribute and to possess cocaine between December 1987, and March 1989. Counts 2 and 3 charged them each with distribution and possession with intent to distribute cocaine on two separate occasions. Moran and Amos were convicted by a jury on all three counts. On appeal, the Fourth Circuit reversed Moran's convictions, finding error in the admission of evidence under Federal Rule of Evidence 404(b). See United States v. Moran, No. 905025 (4th Cir. July 12, 1991) (unpublished) (also reversing for other reasons Amos' conviction on the conspiracy count)
 
 
 [2]
 Several months prior to Moran's sentencing hearing, the district court conducted the resentencing of Moran's former co-defendant Sandra Amos. The district court also found Amos to be a part of the Florida cocaine conspiracy for sentencing purposes and sentenced her to 37 months imprisonment
 
 
 [3]
 As noted, the government is required to prove relevant conduct only by a preponderance of the evidence, and is, of course, not required to produce live witnesses at sentencing
 
 
 [4]
 As noted, the court already had considered the evidence of the Florida cocaine conspiracy when sentencing Moran's former co-defendant Sandra Amos