**UNITED STATES of America,**

v.

**John CARRINGTON, Defendant.**

**No. CRIM. A. 98–0037–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

July 8, 1999.

Krystyna Carmel Nelson, Charlottesville, for John Carrington, defendant.

Ray B. Fitzgerald, Jr., Charlottesville, VA, for U.S.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

On May 10, 1999, the court granted, in part, the May 5, 1999 Motion of the United States insofar as it requested a hearing on the issues previously decided by the court in its April 27, 1999 order. At the hearing on May 12, 1999, the court heard argument from counsel for the government and counsel for defendant on the applicability of U.S. Sentencing Guidelines § 2D1.1(d)(1) to this defendant. In addition, the court established a schedule for the filing of supplemental briefs on the issue. The court received the supplemental briefs and considered them along with the original objection to the presentence report ("PSR") filed by the United States on April 6, 1999, the April 12, 1999 motion by defendant to limit sentencing issues, the arguments of counsel and the relevant law. Having thoroughly considered the issue, the court reaffirms its April 27, 1999 order and declines to exercise its discretion to hear additional evidence at sentencing in support of the United States' argument that application of section 2D1.1(d)(1) of the U.S. Sentencing Guidelines is warranted in this case.

### I.

Defendant Carrington was convicted on February 26, 1999, on the only count of the indictment which charged him: Count I, conspiracy to distribute crack cocaine. The conviction was based on a jury verdict of guilty after a five-day trial involving defendant Carrington and four other defendants named in the indictment.

On April 27, 1999, the court entered its order overruling the United States' objection to the PSR and granting the defendant's motion to limit sentencing issues to the cocaine conspiracy charged in the indictment, excluding consideration as a sentencing factor of potential evidence that Carrington murdered Eugene Siler. Although the Government's Motion for Reconsideration mistakenly referred to the court's order as being entered April 17, 1999, in response to the April 12, 1999 motion of defendant Carrington, the court actually waited until April 27, 1999, to rule on the April 12 motion of the defendant, allowing over two weeks for a response

from the United States.[1] The court considered the arguments made by the United States in its April 6 Objection to the PSR to be sufficient to state its opposition to the April 12 motion of the defendant.[2]

The court's April 27, 1999 order took into consideration all the legal authorities cited and arguments made by counsel in their respective motions. In addition, the court drew on its familiarity with the evidence in this case, gained by presiding at the five-day trial in February. Furthermore, the court was already familiar with similar arguments on the applicability of the murder evidence in this drug conspiracy case because it previously considered both oral and written argument on that issue at the scheduled pretrial conference, at an impromptu pretrial conference held the morning trial was set to begin, and again at a conference held midway through the trial upon motion of the United States for reconsideration of the court's previous ruling excluding the murder evidence.

## II.

The United States objects to the PSR for its failure to mention the cross reference found in the U.S. Sentencing Guidelines at § 2D1.1(d)(1): "If a victim was killed in circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." Section 2A1.1, in turn, provides the base offense level for first degree murder is 43, which leads to a mandatory life sentence. The elements of first degree murder, set forth at 18 U.S.C. § 1111, include "malice aforethought," or premeditation:

(a) Murder is the unlawful killing of a human being with malice aforethought.

Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnaping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of murder in the first degree shall by punished by death or by imprisonment for life;

Whoever is guilty of murder in the second degree shall be imprisoned for any term of years or for life.

18 U.S.C. § 1111.

In the particular factual situation of this case, the application of the Guidelines, as contended for by the government, produces an anomalous result. Where the indictment charges no felonious assault and little evidence, some of doubtful credibility, exists to support the allegation of murder, the Guidelines produce the result where the defendant is in effect convicted of murder in the first degree without the right of proceeding under a charging indictment, without jury protection, and without proof beyond a reasonable doubt. Obviously, while this result is one of effect, rather than one of direct consequence, the difference between the application under the Guidelines and a conviction of first degree murder is nonetheless nonexistent. In both instances, the mandatory result is

---

1. The United States did not notify the court of its intention to file a response, nor did the United States seek an extension of time in which to reply to the April 12 motion.

2. In fact, when the court received the United States' reply to the defendant's April 12 mo-

tion after it filed its April 27, 1999 order, the court found that the reply reiterated the arguments made by the United States in its April 6 Objection to the PSR, as well as directly responding to some of the arguments made by counsel for defendant.

life imprisonment. While prosecution and conviction under 18 U.S.C. § 1111(b) provided for a death penalty or imprisonment for life, it is problematic whether a death penalty would be sought in such a prosecution. It is not problematic that the alternative punishment is imprisonment for life. Thus, whether by separate prosecution under the statute, or application of the Guidelines as sought by the government, the result is a mandatory life sentence, the only difference being the unlikely pursuit of the maximum penalty of death.

The factual differences in this case establish stark contrast to cases in which Section 2A1.1 has been applied, as is set out fully *infra*. In each of those cases there has been strong and direct proof of the actions of the defendant in bringing about the premeditated killing of another. This court has found no case which has a comparable fact pattern to this case. The court has no argument to the proposition that "relevant conduct" can and should be considered in determining an appropriate sentence for a particular defendant. Where someone has been convicted of a drug conspiracy count, and relevant conduct brought forward relates to individual sales of drugs, the court has no apprehension about applying the relevant conduct guidelines. In that case, there is a marked similarity between the offense of conviction and the asserted relevant conduct instances. The situation is significantly different, here, where the conviction is for a drug conspiracy and the effort to enhance is for a murder allegation connected to the conspiracy through evidence at the trial, which lacked any strong indication of credibility.

In the instant case, the application of the Guidelines with its concomitant punishment reaches the same result as would a conviction under indictment of first degree murder. In the Guidelines case, the defendant has not been charged by indictment, has had no jury trial, and the result being reached is by a preponderance of the evidence rather than by proof beyond a reasonable doubt. In either case, the prescribed punishment is life imprisonment. In brief, in application in this case, the Guideline permitting attribution of the murder to Carrington goes too far. It is to be hoped that some resolution to the problem presented by this case can be worked out by appropriate rules for relevant conduct within the Sentencing Guidelines, rather than having such limitations developed on a case by case basis.

### A. Court's Discretion to Deny an Evidentiary Hearing at Sentencing

█ The court is not constrained to allow the presentation of additional evidence at sentencing, especially where, as here, there was a full trial in the case at which all relevant and appropriate evidence was presented. There are many reasons to believe that only the evidence presented at trial—particularly in the case at bar where there was a trial by jury—should form the basis of the court's decision to allow further evidence to be presented at the sentencing hearing. The wide latitude accorded the district court in exercising its discretion at sentencing includes the possibility of declining the parties' request to present evidence. Rule 32(c)(1) of the Federal Rules of Criminal Procedure requires the district court to "afford counsel for the defendant and for the Government an opportunity to comment" on the PSR. However, the Rule continues with this permissive phrase: "The court may, *in its discretion,* permit the parties to introduce testimony or other evidence on the objections." (Emphasis added). In other words, while "must" is used with regard to the court's obligation to hear comments, or objections, from counsel regarding the PSR, the permissive "may" is used when referring to the court's discretion to hear evidence and testimony. If the court has no requirement to hear evidence at sentencing, the determination as to such allowance of evidence logically may be made based on the evidence adduced at trial. *See generally United States v. Moran,* 4

F.3d 987, 1993 WL 331007, at *3 (4th Cir.1993) (finding a district court did not abuse its discretion in denying an evidentiary hearing when the judge received a transcript of the testimony at trial and gave the parties an opportunity to submit memoranda and argue their positions before the court); *United States v. Chaney*, 30 F.3d 131, 1994 WL 363380, at *3 (4th Cir.1994) (finding the court was not required to hold an evidentiary hearing when the parties were given a full and fair opportunity to be heard on their objections to the PSR).

While 18 U.S.C. § 3661 places no limitation on the information the court "may receive or consider for the purposes of imposing an appropriate sentence," it does not require the court to receive or consider further evidence at the sentencing hearing. Even the United States Sentencing Guidelines, which place the most direct constraints on the court's discretion at sentencing, use the word "may" when describing the court's consideration of relevant information at sentencing. *See* U.S.S.G. § 6A1.3(a). Although the sentencing guidelines require the court to resolve disputed sentencing factors, they do not require the court to consider the evidence proposed by counsel for presentation at sentencing. *See* U.S.S.G. § 6A1.3(b). The court's determination in its discretion that hearing such evidence and testimony at sentencing would not be appropriate does not constitute an abuse of discretion pursuant to any statute, rule, or guideline known to this court.

Nor does any of the case law cited to the court suggest it would be erroneous to refuse to allow evidence concerning the murder to be presented at sentencing. The case cited by the government is clearly distinguishable from the case at bar. In *United States v. Kincaid*, the attorney for the defendant made a "surprise objection" at the sentencing hearing, to which the attorney for the United States had not been given an opportunity to prepare a response. 964 F.2d 325, 329–330 (4th Cir. 1992). When the court refused to grant a continuance to the attorney for the government so he could prepare and present his argument in opposition to the defense's objection, the Fourth Circuit found the district court abused its discretion. *See id.* *Kincaid* clearly stands for the district court's obligation to allow effective presentation of argument on objections to the PSR, which may include granting a continuance so either of the parties can prepare a response to any surprise objections sprung on them at the sentencing hearing. However, the idea that the court must allow effective presentation of *argument* and the proposal that the court must allow all *evidence* proposed for presentation by the parties are two distinctly different concepts. Here, unlike the situation in *Kincaid*, no party has made any "surprise objection," to which the other side was not given a fair opportunity to prepare a response.

Rather, the court has given both parties several opportunities to argue their objections to the PSR. As such, the present situation is more similar to the case of *United States v. Moran*, 4 F.3d 987, 1993 WL 331007 (4th Cir.1993). In *Moran*, the parties disagreed about whether the defendant was a member of a Florida drug conspiracy. *See id.* at *1. A jury previously convicted the defendant for his involvement, but the Fourth Circuit reversed the conviction upon finding an error concerning admissible evidence. *See id.* at *1 n. 1. The defendant then appeared before a different district judge after pleading guilty to his involvement in a New York drug conspiracy. *See id.* The plea agreement acknowledged the disagreement over the Florida conspiracy and requested the district court to make a finding regarding the defendant's involvement.[3] In resolving the issue, the court relied on the transcript

---

3. If the district court found the defendant was involved in the Florida conspiracy, the defendant would have been responsible for distributing 25 kilograms of cocaine rather than 4.08 kilograms. *See Moran*, 1993 WL at *1.

from the criminal trial before the original judge and further heard oral argument from both parties; however, it denied the defendant's motion to hear the testimony of additional witnesses. *See id.* at *2. The Fourth Circuit upheld the denial of live testimony because the judge, though not having the benefit of hearing the criminal trial, had before him a record of the evidence. Further, the judge afforded all of the parties the opportunity adequately to present their arguments before the court. *See id.* at *3. As a result, "the court had 'become familiar with this case'" and did not abuse its discretion in denying the evidentiary hearing. *See id.*

In the case at bar, the court heard the criminal trial of defendant Carrington. Thus, it is very familiar with all of the evidence presented at trial. Further, the applicability of the cross-reference to the defendant has been thoroughly briefed and argued by the counsel of both parties. In accordance with the *Moran* case, this court may in its discretion decline to hold an evidentiary hearing because of the court's exceptional familiarity with this case and the fact that it permitted both parties to be heard fully regarding their objections to the PSR.

On reflection, it is obvious that the cases have continually stressed the fact that consideration of additional evidence is a matter within the discretion of the court. Were that not so, in this particular case the court would be required at sentencing to go into what amounts to another trial on a murder charge, the strong difference being that in this instance the prosecution would prevail on proof by a preponderance of the evidence, as against the more stringent proof beyond a reasonable doubt. *See United States v. Engleman,* 916 F.2d 182, 184 (4th Cir.1990). If the district court is granted the discretion to accept or not to accept such evidence, then the district court has the opportunity to consider the consequences of entering into such a trial within a sentencing proceeding.

If the prosecution is permitted to introduce evidence to support the use of the cross reference, it is surely to be expected that the defendant will offer evidence denying or countering the prosecution's evidence. While such a problem is sometimes presented in similar arguments concerning relevant evidence, these instances are usually readily handled. In order to exercise an informed discretion as to the propriety of admitting such additional evidence at the time of the sentencing hearing, the district court is constrained to look at the evidence introduced at trial. In looking at the trial evidence in this case, the court finds little or no basis for entering into such a "trial" in the sentencing proceeding. While discretion resolves this issue, the court deems it appropriate to deal further with the case as a whole to explain this exercise of discretion.

### B. *Failure to Prove First Degree Murder by a Preponderance of the Evidence*

The defendant asserts the United States should not be allowed to argue that the preponderance of the evidence supports a finding that Carrington murdered Siler. According to a plea agreement signed by the attorney for the United States and offered to the defendant, there was not a preponderance of the evidence as of February 17, 1999, to show Carrington's responsibility for the murder. The United States argues the court should not consider this signed plea agreement because it was never accepted by the defendant. However, as argued by the United States, there are no limits on what the court can consider at sentencing, including representations made in a written plea agreement. *See United States v. Falesbork,* 5 F.3d 715, 722 (4th Cir.1993); 18 U.S.C. § 3661. The court may consider the representation in the plea agreement, not in order to enforce the plea agreement's provisions, but to determine the strength of the evidence of Carrington's responsibility for the Siler murder.

No case or rule known to this court prohibits the consideration at sentencing of a written plea agreement, signed by the attorney for the Government, but rejected by the defendant. Rule 11(e)(1) of the Federal Rules of Criminal Procedure does not provide, as suggested by the attorney for the United States, that a written plea agreement, offered by the government to the defendant, should not be considered or even published to the court. Rather, Rule 11(e)(1) provides the court should not participate in any plea discussions, which it did not. Neither does Rule 410 of the Federal Rules of Evidence prevent the court from considering the plea agreement, signed by the United States, but rejected by the defendant, for purposes of sentencing. At sentencing, as argued elsewhere by the United States in its own motion, the Rules of Evidence do not apply. *See* U.S.S.G. § 6A1.3; 18 U.S.C. § 3661.

The court also takes into consideration the inherent contradiction in the government's argument that the preponderance of the evidence will support holding this defendant accountable at sentencing for the murder of Siler when the government also contends the preponderance of the evidence does not show any of his co-conspirators, even the leader of the conspiracy, should be held accountable for the murder.[4] The plea agreement entered into by the government with Antonio Smith, the leader of the conspiracy, states:

> [T]he evidence available to the government on the date this agreement is signed does not establish by a preponderance that Smith was responsible for, or knowledgeable about the murder of Eugene Siler, or that he should have foreseen that murder. For this reason, the parties agree that Smith' [sic] sentencing guideline level should not be computed with reference to Section 2A1.1 of the Guidelines.

A similar stipulation was made by the government in the plea agreement entered into with John Howard.

The United States argued at the May 12 hearing and in its May 18 Memorandum of Points and Authorities that any defendant in a conspiracy case can be held responsible for a murder reasonably foreseeable to the conspirators under the traditional *Pinkerton* analysis. *See United States v. Dawson,* 141 F.3d 1160, 1998 WL 188636, at *6 (4th Cir.1998), *cert. denied sub nom Kirkland v. United States,* —— U.S. ——, 119 S.Ct. 222, 142 L.Ed.2d 183 (1998) (citing *Pinkerton v. United States,* 328 U.S. 640, 646–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)). Under this reasoning, the court should attribute Siler's murder not only to Carrington, but certainly to Smith, as leader of the conspiracy, and to Howard, who also participated in efforts to seek out Siler the evening before he was found dead. It would be inconsistent to hold Carrington accountable under a *Pinkerton* analysis if none of the other co-conspirators are held accountable when at least some of them were aware on the eve of Siler's death that Smith was leading a group to avenge the suspected theft by Siler of drugs and cash from Smith's residence. Certainly, it would have been foreseeable to Smith that the killing of Siler would result from the activities of the group which he organized in response to the theft. The evidence of the group's activities was known to the United States at the time it entered into the plea agreements with Smith and Howard, and at the time it offered the plea agreement to Carrington. Yet all of those plea agreements contained the same approximate language

---

4. This inconsistency may be bordering on the edge of selective prosecution by the government. *See generally United States v. Greenwood,* 796 F.2d 49, 51 (4th Cir.1986). The government guaranteed it would not seek the cross-reference for those defendants who plead guilty by declaring in their plea agreements it did not have a preponderance of the evidence. However, Carrington refused to plea and instead went to trial, availing his constitutional rights. Now, the government is seeking the cross-reference in his sentencing only.

stipulating the preponderance of the evidence did not show any of those defendants were responsible for Siler's murder.

The reasoning in the *Dawson* case, cited by the United States, is inapplicable to Carrington's case for other reasons. Although the Fourth Circuit reasoned two of the defendants could be convicted for the intentional killing of an innocent bystander despite the undisputed fact neither fired the fatal bullet, those defendants had actually been indicted and convicted under 21 U.S.C. § 848(e)(1)(A), which applies to any person engaging in a drug trafficking offense who intentionally kills or causes the intentional killing of an individual. *See id.* at *5. The jury at trial, and not just the court at sentencing, considered evidence linking the defendants in *Dawson* to the killing of an innocent bystander. *See id.* The evidence in *Dawson* clearly indicated the defendants had at least been aware of, and may have been present at, the shooting spree which resulted in the killing of a ten-year old boy. *See id.* One of the defendants, as the leader of the drug conspiracy, directed his bodyguards to fire their weapons into a vehicle in order to kill its occupants. *See id.* at *1. A stray bullet struck and killed the ten-year old boy as he was playing nearby. *See id.* The court of appeals found the evidence supported the conclusion of the jury that the killing of another was foreseeable to the defendants in this drug conspiracy case. *See id.* at *6. But those defendants, unlike Carrington, had been indicted for causing the killing of another and were convicted after a jury trial based on that charge in the indictment.[5] *See also United States v. Brinkley*, 46 F.3d 1127, 1995 WL 38979, at *2 (4th Cir.1995) (applying Section 2A1.1 when the defendant was previously convicted of murder in state court); *United States v. Little*, 165 F.3d 912, 1998 WL 785947, at *3 (4th Cir.1998), *cert. denied*, — U.S. ——, 119 S.Ct. 1278, 143

L.Ed.2d 372 (1999) (applying the cross-reference when the defendant had been convicted of murder by a jury); *United States v. Gullett*, 75 F.3d 941, 949 (4th Cir.1996) (applying the guidelines enhancing the defendant's sentence when a jury found his conduct to be the proximate cause of the victim's death).

The *Dawson* opinion suggests that were this court to hold any co-conspirator responsible for Siler's murder, it should hold responsible all the defendants who, within the scope of their participation in the conspiracy, could have reasonably foreseen the killing of another would result. Yet the United States stipulated the evidence does not support holding responsible any defendants other than Carrington, not even the leader of the conspiracy, to whom the killing logically would have been the most foreseeable. The court concludes, however, that if the leader of this conspiracy cannot be held responsible for the murder, neither should only one of the other defendants. Even if it was Carrington who actually carried out the killing, it was at least as foreseeable to Smith that Siler's murder would result as it was to Carrington, and perhaps as it was to other members of the group, including Howard, which constituted the search party for Siler the night of his apparent murder.

The United States would doubtless respond by pointing out the carefully crafted language in the Smith and Howard plea agreements which qualifies the characterization of the evidence as failing to show responsibility by a preponderance as restricted to evidence known to the United States only *as of the date on which the plea agreement was entered*. However, the evidence must have been sufficient under the *Pinkerton* analysis, even as of the date those plea agreements were entered, to show Smith and Howard could have foreseen Siler's murder. The United

---

5. There was another defendant in *Dawson* to whom the cross reference at section 2D1.1 was applied, but the Fourth Circuit, in affirming her conviction and sentence, did not indicate what evidence supported the finding that the killing of the ten-year old boy was foreseeable to that defendant also. *See id.*

States had been aware of three witnesses who would testify Carrington told them he killed Siler, since at least as early as January 15, 1999, although no details about those witnesses, or even their names, were provided to the defense, or mentioned at the February 17, 1999 pretrial conference. The United States was also aware that a group of the defendants assembled the night before Siler's body was found to search for him in response to Smith's belief that Siler stole drugs and cash from his residence. That group included not only Carrington and Smith, but others whom the United States does not argue should have foreseen Siler's death.[6]

There is a rule, found in the Sentencing Guidelines, that representations made in a plea agreement must not be misleading. *See* U.S.S.G. § 6B1.4. Even if the court does not hold the United States to the representation its attorney made in the proffered plea agreement with Carrington, the court accepts as true the representations made in the plea agreements with Smith and Howard. If the preponderance of the evidence did not support holding Smith or Howard responsible for Siler's murder, the court can only find the preponderance likewise does not support attributing the murder to Carrington.

Were the court to consider the trial evidence that Carrington committed the murder, it would find that evidence to be weak. The evidence at trial fails to show by a preponderance that Carrington committed first degree murder in relation to this drug conspiracy. William Bailey's testimony, the only testimony at trial relating to Carrington's direct responsibility for Siler's murder, bore few of the usual indicia of reliability. His testimony could not be corroborated by anyone else at the time of trial because the attorney for the United States deemed other witnesses unreliable.[7] Bailey's testimony may have been persuasive in demonstrating Carrington's awareness of and participation in the goals of the conspiracy, including possibly the Siler murder. But the testimony of Bailey, a cell mate of Carrington's who claims he heard Carrington boast about killing Siler, as well as boasting he "killed before and would kill again," is of questionable weight in meeting the requisite preponderance of the evidence burden. Such "jailhouse talk" constitutes too little to justify considering commission of the murder as relevant conduct in sentencing Carrington for participating in the drug conspiracy. Carrington may well have bragged to his cell mates he committed murder, in an effort to intimidate those around him in prison, or for other reasons. Nor does Carrington's knowledge about details such as the number of times Siler was shot prove by a preponderance Carrington actually committed the murder. As a member of the conspiracy, Carrington may have become familiar with details of Siler's murder through conversation and collaboration with other co-conspirators who were actually responsible for the murder. In sum, the court has no evidence whatsoever placing the gun that shot Siler in Carrington's hands. Rather, the only evidence of Carrington's involvement in the murder stems from his cell mate's testimony, lacking in any strong indication of credibility.

The weakness of the evidence at this point in this case contrasts sharply with the strength of the evidence in other cases

---

6. Roger Price, a witness at trial, the substance of whose testimony was presumably known to the United States in advance of trial, testified after he and Siler and one Rasha Anthony completed the burglary of Smith's residence, a group of people including Smith, Carrington, and Howard came to his (Price's) residence in search of Siler. Thus, Howard and others, as well as Carrington, were aware Smith believed that Siler stole drugs and money from his (Smith's) residence.

7. The other witnesses, proposed by the United States before trial for their testimony attributing the Siler murder to Carrington and/or other members of the conspiracy, both failed polygraph examinations, causing the United States to disregard them as unreliable. *See* United States' Reply to Motion to Limit Sentencing Issues, at 3, n. 1.

in which the cross reference to Section 2A1.1 in the Sentencing Guidelines was applied. For example, in *Wilkerson,* the case cited by the United States, there was testimony at trial the defendant shot the victim in the leg, then responded to his begging for his life by shooting him again in the head, twice. *See United States v. Wilkerson,* 173 F.3d 427, 1999 WL 104596 (4th Cir.1999), *petition for cert. filed,* (June 1, 1999) (No. 98–9595). Not only did this testimony at trial show Wilkerson actually pulled the trigger, but it showed Wilkerson's premeditation in refusing to heed the cries of his victim for mercy and proceeding to fire the lethal shots. No such equivalent testimony·was presented in the trial in Carrington's case.

Likewise, the Fourth Circuit also upheld an application of Section 2A1.1· when the trigger man himself testified at the defendant's sentencing about the events occurring during the murder. *See United States v. Ford,* 106 F.3d 392, 1997 WL 14055, at *4 (4th Cir.1997), *cert. denied,* 520 U.S. 1236, 117 S.Ct. 1837, 137 L.Ed.2d 1042 (1997). The trigger man informed the court that the defendant drew a gun on him and threatened to kill both him and his family if he refused to kill the victim. *See id.* at *1. Based on his testimony, the district court was factually supported in finding a preponderance of the evidence. *See id.* at *4. In sharp contrast, a finding of first degree murder in the present case is not factually supported as no eyewitness of Siler's death testified that Carrington was even at the murder scene.

Similarly, in *Crump,* the case used by the probation officer in his response to the United States' objection to the PSR, there was much more evidence than we have in this case about the defendant's specific actions in committing the murder and there was direct evidence to show the defendant was responsible for actually pulling the trigger. The evidence in *Crump* showed that Crump lay in wait for his intended victim, confronted him and ordered him to lie down, and, when he re-fused, shot and killed him. *See United States v. Crump,* 120 F.3d 462, 464 (4th Cir.1997). Evidence revealed Crump's subsequent actions to dispose of the weapon and his bloody clothing, both of which were later recovered by the police. *See id.*

Even cursory inspection of these cases illustrates with clarity the distinction between these cases and Carrington's case.

### III.

The United States is certainly correct that it is within this court's power to sentence Carrington using the cross reference at section 2D1.1 of the Sentencing Guidelines. However, none of the law cited by the United States indicates that in this case, the court *must* use the cross reference. The court *"may* look to the conduct surrounding the offense of conviction in fashioning an appropriate sentence, regardless of whether the defendant was ever charged with or convicted of that conduct and regardless of whether he could be." *United States v. Meyer,* 157 F.3d 1067, 1081–82 (7th Cir.1998), *cert. denied sub nom. Hoff v. United States,* —— U.S. ——, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999) (emphasis added). The sentencing guidelines allow the court to consider an allegation as serious as first degree murder as relevant conduct, without offending due process or any other constitutional guarantee. *See id.* However, all the case law, rules, guidelines and statutes preserve the discretion of the court in this area. The court chooses to exercise that discretion, not in the manner recommended by the United States. The court finds it appropriate so to exercise its discretion here to decline to hear further evidence at sentencing regarding the application of the cross-reference noted in Section 2D1.1(d)(1) of the U.S. Sentencing Guidelines.

An appropriate order this day shall issue.